That leads us to number 24, 1244, Trustees of Columbia University v. Gen Digital Inc. Okay, Mr. Clement. Good morning, Your Honors, and may it please the Court. This appeal involves an extraordinary contempt sanction against Quinn Emanuel for its failure to comply with a March 15, 2022 order to disclose a host of attorney-client communications on the record by the next day. Under Fourth Circuit law, which governs this issue, that contempt order cannot stand unless the March 15 order that underlies it is can't stand if the order that underlies it is invalid. That order was invalid both substantively and procedurally, and the departures from due process and party presentation continued with the contempt sanction itself. One way or another, the contempt sanction must be reversed. Now, first, on substance, there are multiple problems with the March 15 order, starting with its flawed premise that a conflict prevented Quinn from simultaneously representing Norton and its former employee, Dossier. There was no such conflict. To be sure, Dossier's deposition testimony was not unalloyedly helpful for Norton. That is often the case with employees with employer-funded joint representations. That the testimony is something of a mixed bag is utterly commonplace and not the kind of real conflict that precludes a joint or a common representation. Jointly represented employees show up on the opposing side's witness list with some regularity without triggering a disqualifying conduct. Here, no one, including Columbia and its lawyers, raised any suggestion of a conflict when Quinn Emanuel represented Dossier in a nearly seven-hour deposition back in August 2014. Okay. Can I, I'm sorry, we're already tired after this morning, but let me ask you about, you give us, and I'm grateful for that, kind of a Chinese menu or cheesecake factory about all the different things that are wrong and so we could do less and we could do more. So this question is about how much we have to do, assuming we agree with at least some of your arguments. So on the due process front, if there's no process and we have to go undo the contempt order, but the original order, the disclosure order, can that be left? Is that satisfactory to just go to the contempt order and say that's problematic? So, I mean, we did give you something of a Chinese menu. I mean, you know, I'm here representing only Quinn Emanuel. So from the perspective of my client, sort of anything that gets rid of the contempt sanction is a pretty good day for us. So if you want to go right to that, I think that is sufficient and I'm happy to address that. I do think it makes some sense, though, to start with. No, and I don't disagree with that. Okay, so let's start where you started. If we see there's a due process violation, why isn't the result, therefore, not to undo it or to reverse it or to decide here whether there was a conflict, but to send it back to the district court for a new opportunity for the parties to brief that issue before her and allow her to reach another decision, which would obviously be reviewable, God forbid, once again. Why isn't that the better course than reversing? So, I mean, God forbid indeed, and I guess from my perspective, I'm not even sure you can quite sort of unring the bell at this point as to the March 15th order. Because the March 15th order, again, it is resolving motions in limine filed by Norton, and so I don't think there's any other word for it than gratuitously. It starts in footnote 7 and then it's picked up in the language of the order. She then orders this incredible disclosure of attorney-client privileged information. Now, I don't think there was any conflict before that order, but once that order's out there, that scrambles everything. Because at that point, Quinn Emanuel is in an impossible position. I think the only way to understand her order is that she has held that the attorney-client privilege is already gone. And there's a lot of back and forth about who waives it and all of that kind of stuff, but the gist of her March 15th order is that the engagement letter is void, that the attorney-client privilege has been vitiated retroactively to some unspecified time when the conflict arose. And so at that point, I mean, everything changes at that point. Fair enough. So if we unravel that order, but we do it on the basis that there was no opportunity to respond, you're not saying she wouldn't have had authority. You would disagree where she got, but to raise the issue at least and give the parties an opportunity to respond. So we unring the bell, but we allow for a do-over. Again, I think it's hard for me to get my head around what a do-over looks like at this point, when Dossier is now talking to Columbia's lawyers and Quinn Emanuel is out of the case effectively and Latham & Watkins is representing Norton. I just think it's hard to unring the bell here. But just to underscore, I think, the due process problem here, I think it is worth contrasting what happened with this extraordinary order on March 15th with what happened when Norton... Counsel, when the March 15th order was issued, did Quinn demand or request an immediate hearing? So what it did is on March 16th, so the next day, which is the date they were given to respond, they filed a two-page document that basically said, we're not going to comply. It's a very brief document. They invoked attorney-client privilege as well, but they said, we're not going to comply. Then exactly one week later, on March 22nd, they filed a motion for reconsideration, pointing out due process problems and substantive problems and asked for expedited briefing on that without getting any additional briefing the district court denied at the same day. So does the privilege belong at that point to Dr. Dossier or to Quinn? So it belongs to Dr. Dossier, but the problem, at least in my estimation, is that the order that she's issued on March 15th actually is only, I think, understandable as saying the privilege is gone retroactively. So nobody has it going back to 2017. And that's actually consistent for what it's worth with the way Columbia itself described the effect of her March 15th order. This is at Appendix 43, 922, where when they're doing their motion to show cause for contempt, this is later, they describe her March 15th order as finding, quote, there was no attorney-client privilege between Dossier and Norton's counsel during the period when counsel's reputation of Norton resulted in a conflict with its purported representation of Dossier. So the way I understand the order is, I mean, you know, you can't comply with it without going to Dossier and having Dossier sort of waive an attorney-client privilege. But the premise of the order is that the privilege is already gone. That's why she thinks that she can order Quinn Emanuel. Dr. Dossier could have waived it, but could have also claimed it or invoked it. Yes, but I think the second this order comes down, Quinn's in an impossible position, right? Because they have – and this didn't happen. I want to be clear. I don't want to be accused of misrepresentation. It sounds to me like you're saying at that point there was nothing that you could do. The decision had been made, so we went forward. I don't think there was – I mean, I don't think there was anything that they could do that wasn't entirely problematic because of the nature of the order. Because I think what they would have had to do – and this didn't happen – but what they would have had to do is go to Dr. Dossier and say, look, there's this order, the premise of which is that the attorney-client privilege has been vitiated going back to 2017. We think that's fundamentally wrong. I suppose you could try to make this issue go away by waiving your privilege at this point. But you preserve it. You do that to preserve the privilege. Absolutely. That's what we tried to do in the March 16th order. But you seem to argue in your brief, and this is one part where I find it a little difficult to accept, that you just didn't have time. Your argument seems to be, like, he's overseas in Saudi Arabia or wherever he is, and you didn't have enough time. Well, as it turned out, you had a lot of time between things that happened. So even if you couldn't reach him in six hours, you also say, in fairness to you, that you wanted him to have time to think about it. You didn't want him to make a snap decision. But enough time passed that why didn't you at least try to do that? That could have at least taken the issue off of the table. So I think the timeline on this is important. Here's the problem. So we're told to comply on the record the next day. So I don't think there's time to get everything, all the bells and orders by the next day. So we tell the court on March 16th that we are not going to comply. Then by March 22nd, that's when we file the reconsideration motion, which is denied the exact same day. And then, you know, at that point, you know, I want to see if I can get the exact date here. But by March 28th, Quinn Emanuel withdraws from recommending dossier. So there is a sum total of, I guess that's, you know, hate to do math in public, but 13 days between the March 15th order and the time that Quinn Emanuel withdraws from representing dossier. So there's really no large increment of time where they could go to dossier. But I do want to be as clear as I can. I don't think that really matters in the end because the effect of her order on March 15th is to say the privilege is already gone. It's not a matter of waiving it. It's already gone. And that's what we say we're not going to comply with. That's what we try to get reconsidered. And the point I was trying to make before is I think it's very helpful to contrast the process here with the process that was given when Norton moved for sanctions against Columbia for the unauthorized contact with dossier. Because on that motion, you had a party actually going into court and saying we want sanctions against the other side. And then both, it was fully brief, and both sides had their competing ethics experts. And we had the ability of the adversarial process to get to an answer. Frankly, I don't think the court got to the right answer, but that's neither here nor there. At least there was procedural due process. And one detail, but I think it's an important detail, is the ethics opinion that was offered by Columbia in that proceeding, their expert didn't have the benefit of the engagement letter. And I think that that expert not having the engagement letter very much colored the conclusions that that expert made. So I am anticipating that my friend's going to come up here and say, well, the due process violation wasn't as bad as it looks because there was some briefing on conflicts back in the context of the Norton motion. Now, first of all, I don't think that remotely gets it done. It doesn't allow you to do the sua sponte. But to me, it just illustrates that if you do this the right way, then you get the issues joined. You don't have people trying to supplement the record on appeal. You get the issues joined. You get competing experts who are actually dealing with the relevant provisions. In that context, that's what essentially got into the record, the engagement letter. There's clearly a due process problem here in the sense that she didn't have a hearing. Because it looks like criminal contempt. But that's not a solution because the result of our holding that would be to send it back for a hearing to determine whether there was a contempt. Your argument is there can't be a contempt because the order was invalid. As I understand it, you're citing various cases like Eureka, which suggests that even if there's a conflict, the privilege continues to exist. And the counterargument is, well, you had an obligation in order to comply with the order to ask the client to waive the privilege. Correct? I mean, I suppose the argument they would suggest is we had an obligation to do that. But I don't think that's right. I think that we would. Well, that's the question. Yeah. Okay. I mean, but I still think at the end of the day, under the Fourth Circuit law, it's clear that if the March 15th order is procedurally or substantively invalid, then on appeal we can. But your argument is that the order didn't require them to put a mandate to seek a waiver of the privilege. Right. It required just to produce the documents. I think that's exactly right. And that's why I think with that language I read before, I think Columbia had it right when they were, you know, seeking a motion to show cause when they said what the order did was it said the attorney-client privilege was gone retrospectively. So it wasn't and the order is consistent with that, right? The order doesn't say go call up Dr. Dossier and see if they'll waive the privilege. If that's what the order said, I mean, if I were there in real time, I would have said that's not a valid order either. And I might try to file a motion for reconsideration. But at least that would have been an order to go talk to Dr. Dossier and it would presume that the privilege still exists. But that wasn't the order, as Your Honor points out. The order was you disclose next day on the record in writing. And that's completely substantively wrong. I mean, in my view, that's wrong soup to nuts. There's not a conflict that required the ceasing the joint representation. If there was a conflict, it would have been the kind of conflict that was waivable. And even if there were an unwaivable conflict, it wouldn't have vitiated the attorney-client privilege retroactively. And that's the only way to understand it. I was surprised that there wasn't an attempt to get a waiver here just for protective purposes. I mean, look, with the benefit of hindsight, there might be things that you do differently. But as I pointed out, the whole period between this order. That's pretty common practice in mitigation practice. I mean, that may be, Judge Reyna, but this is a pretty extraordinary order. I mean, again, and this isn't, as Judge Dyke pointed out, this isn't an order that says go talk to your client and see if the waiver prevails. I understand, and that's why I'm still a bit puzzled as to why Quinn didn't jump on this and say, my God, we've got to do everything possible now to fight this instead of just letting it go. But to the contrary, I think Quinn did everything it could to fight this. I was asking you if you followed a motion for reconsideration that same day. Did you seek a waiver? Did the client reassert its privilege? And as I tried to respond in any event, on the 16th, they filed the motion that they weren't going to comply. And then six days later, on the 22nd, so a week from the order, six days from that, they filed a motion for reconsideration. If we were to hold in the other case that the patent is invalid under 101, does that move this case? I don't think so, Your Honor. I think there's still that contempt sanction. That contempt sanction still gives us kind of independent of the exact sanction. There's a precision case by Judge Friedman says that they're still standing to appeal that. I think if this whole case had gone away and the district court had rejected the patent on 101 grounds but still held Quinn in contempt, we would be able to appeal that and we should have the right to get that vacated or reversed. And I think that's because of the reputational damage of a finding like this. If we were to send it back, would it be with instruction to provide you a hearing on the matter? I mean, I think that's the minimum that you could have. But as I indicated before, I actually think that the right result here is to just reverse the finding of contempt because it's based on an invalid order. And I think and then if the rest of the case goes away, I think we're done. Yeah, the problem I have is the leap between reversing the contempt order. I get that. But based on the earlier order, whether we have to reach anything in the earlier order, if it's necessary for you, if we just say we reverse it, assuming hypothetically that we get rid of this on 101, if we're enough to just get rid of the contempt order, we'll stop. I mean, I think it would be. Because it's due process and we can get rid of it on any number of grounds. I agree, Your Honor. And I guess all I would say is to me, I still think the most straightforward way to decide this is to just go back to the March 15th order, say the March 15th order didn't provide due process, it's invalid, and you can't have contempt on an invalid order and the case is over, so let's just all go home. Okay. Thank you, Your Honor. We have two minutes remaining. Mr. Wool. Judge Dyke, may it please the Court. This appeal is much simpler than Quinn makes it seem. Quinn was sanctioned for not complying with the court order. In responding to the motion to show cause, Quinn made one and only one argument, that it had complied. That was wrong. The district court found it was wrong. Quinn doesn't challenge that finding here and it would be reviewed for clear error in any event. That's enough to resolve this appeal. Of course, Quinn now says that it couldn't comply because of the attorney-client privilege. But there was a lot of evidence in front of Judge Leung that Quinn was not representing dossier, it was shielding an adverse witness from appearing at trial. Chief Judge Lauk said that in the 20-plus years of the batch. There are all these cases, like Eureka and Teleglobe and FDIC, that say the existence of a conflict doesn't eliminate the privilege. Do you agree with those cases or disagree with them? I agree with them. It's black-letter law. They're right about that. The client continues to hold the privilege, and a client who's being poorly represented by a lawyer thereby doesn't lose the privilege. Judge Lauk didn't say a word to disagree with that. Mr. Clement, in his briefs and at arguments today. So the privilege exists until the client waives it, right? Yes, and it's very important, Judge Dyke, to understand what exactly Chief Judge Lauk said here. She didn't say, oh, I'm wiping out the privilege and all the rest. Chief Judge Lauk said, I have in front of me substantial evidence that a firm is harming one client to help another. The firm acknowledges that it has misrepresented something to its client. It has told the client that I, the court, found that the firm is representing the client, and I specifically held that open in two separate orders, the court says. If the privilege is invitiated by the conflict, how could the order be valid? And so that's what I'm getting to. What the court says is, look, I have substantial evidence in front of me that you may no longer be representing your client. So I need, this is at page 72 of the appendix. She says, I determined once and for all I need to get to the bottom of this. I need to look at these communications to determine whether there's an attorney-client representation at all, whether you have a client that doesn't want to be represented by you anymore. The fact that they don't want to be represented anymore, even if you assume that that's true, doesn't vitiate the privilege for the past either, right? That's right, and the court didn't say, I'm vitiating the privilege. The Virginia Ethics Rules say, this is 1.6b1, you can provide it without getting rid of the privilege in response to a court order. The court didn't, Judge Lauck didn't say anything about setting aside privilege or all the rest. Judge Lauck said, I have a lot of evidence in front of me. How can the judge order the disclosure of privileged information without a waiver from the client? Oh, well, look, I think separate argument whether the judge can order it publicly disclosed. I think if Quinn had attempted to comply by coming in and saying, we want to disclose it in camera, and the court had said no, I think it would be a very different and more difficult case for me, Judge Dyke. But I think if this court had said in camera, right? So we're going to decide this case on the fact that they didn't come in and say, can you undo your order and let us do it on camera, and that's the way this case should go down? Judge West, I just think we need to be fair to the district court. The district court addressed the process points at three separate times in the record below. By my count, at page 34351, pages 40, 466, and 470. Did she ever suggest that the submission in camera would satisfy the order? She did. In footnote 16 of the order that's under review, on page 91 of the appendix. 91? That's right. The district court strongly suggested that if they had asked for in camera review, they would have gotten it. So it's not quite the same thing as saying that was not the order. No, no. Judge Dyke, if Quinn had ever, during the course of these proceedings here, attempted to comply, we'd have a different case. But to Judge Rayna's questions, Quinn never consulted his client and never attempted to comply. And what Judge Lauck said was, look, I had them. So my theory is, given this order, they had to go to the client and ask the client to waive the privilege? I think that, at the minimum, they had to discuss it with their client. It turns out we now know. But she gave them, like, 12 hours to do that? Oh, I agree. And if ultimately they had been deemed and held in contempt for a timeliness problem, Judge Brooks, just not being able to get it in in 24 hours, I agree they'd have a much better argument. But this has nothing to do with timeliness. Like, the contempt here didn't turn on timeliness. The contempt has entered a year and a half. Okay. Excuse me, in September. Do you agree that the – let's just consider the order in isolation. An order to produce this material was invalid because there was an attorney-client privilege, correct? No. No. And why wasn't there an attorney-client? Because the court always has the authority to look into misconduct before involving lawyers and clients. And the court could say, you purport to have a client who's over in Saudi Arabia. That client for years has said he wanted to testify and has now made statements harmful to your client. You are coming in and saying to me, the judge, that he somehow changed his mind. And you've put in this one-sentence, unexplained declaration from him. Meanwhile, you are acknowledging that you have misrepresented to him that I made a finding that you represent him that I didn't make. Look, Quinn is not in this case covering himself with glory in the way it's behaved, okay? But that's a different question than whether the order is valid or invalid. I'm trying to understand how there could be a valid order when the existence of a conflict doesn't vitiate the privilege. Because the very question before the court, Judge Dyke, is, is there an attorney-client relationship? Quinn is saying there is, and the judge is saying, I have allotted evidence in front of me that that may not be true. So at that point, shouldn't the court order to, in order to show cause? Well, so what the court says. I mean, these are significant rights that we're speaking about. I agree, Judge Rayner. And that's why I think you've got to understand the procedural history, and I don't think Quinn is fair to it. The judge says, look, I had a motion for sanctions. Then I had a motion, two motions in lemonade. Then I had your reconsideration motion. Then I had a round, multiple rounds of briefing and hearings on the missing witness instruction. And then I had a full round of briefing on the motion to show cause. The judge says at multiple points, I have had more than a half dozen rounds of briefing on this. I've had more than a half dozen hearings. I've given you every opportunity to make every argument that you want. You have not attempted to comply. You haven't offered any explanation for your misrepresentation to your client. I still don't know why the client isn't here or whether you've talked to the client. And even after all of that, does not enter any criminal sanction, Judge Dyke. Does not enter a fine, doesn't refer any lawyer for disbarment. Says only, you have deprived Columbia of some evidence of litigation misconduct that is relevant to the enhanced fees and damages questions. And so it says a negative inference. But if we rewind the clock, we're back at March 15th, I guess. It's a motion in lemonade before the district court judge. And suddenly there's a, is it a footnote or something that requires issues of disclosure order? Not raised by either party, not briefed. Full stop. I mean, we're talking about the disclosure order, the first instance of this, how this began. There might have been, I think this is what Judge Raina is getting to. Wasn't there an obligation? Didn't the parties have the, shouldn't the parties have had the ability to present argument on that question? So they did present briefing and argument on the question in multiple different stages of the case. Before or after? I'm just talking about after she issued the order. But I want to step back. Is that good enough? I want to step back in time. I want to be fair to the district court judge, too. She had a lot on her plate. But really, after? I want to be very fair to her, right? If the court thinks that something went wrong here, it ought to send it back. This district judge said this was conduct that she had never seen in her 20-plus years on the bench. I think we ought to give her the opportunity to address it. I know exactly what a do-over would look like. I don't know why the other side thinks it was tough. Mr. Clement and I will brief whether there was anything wrong with this and whether Quint should be held in contempt. But to step back in time, Judge Prost, let's be fair to the district court. The district court says, I decided your motion for sanctions in order, and I left open the question of whether you were representing Dossier because there was a real question in my mind about that. Then you came in with your motions in limine and told me, take out everything at trial about the fact that Dossier is not going to be here. But wait a minute. Dossier said he wanted to be here, and now you're coming in and telling me he changed his mind. You're getting into things which don't have to do with the validity of this order, which might be a ground for sanctioning Quint. But the order said the privilege is gone because of the conflict. You've admitted that that holding is incorrect. The order rests on an incorrect premise. And you're now arguing, well, I could have rested on the idea that the attorney-client relationship was terminated, but she didn't find that, and I don't see how that could be found without a hearing. How is it that we can sustain this order when on its face it seems to be invalid? Well, Judge Dike, in fairness, I want to – we need to separate the procedural problem that Judge Post was raising from the substantive problem you're raising. My procedural response to Judge Post was the judge said at that point, you've admitted that you have misrepresented something to your client, and I want to get to the bottom of this. To your substantive point, the court didn't say, I'm finding that the privilege is out the window. The court said, and this is at page 72 of the appendix, the court says, in light of your misrepresentation of your client, which you acknowledge and do not dispute, I found it necessary to determine once and for all whether you actually represent a dossier or could represent a dossier in the future in front of me. And the only way the court had to do that, because a dossier was over in Saudi Arabia and Quinn was purporting to speak to him or speak for him, was to say, show me the communications because I want to see if you've been misleading a client. She didn't decide the issue of whether they represented the dossier. That's exactly my point. She said, I have a lot of evidence. How can you base an order on something which you haven't decided? Well, that's not what she decided, Judge Dike. There's two separate questions, conflict and privilege, and we need to not conflate those two. Under Virginia law, once your client's interests materially diverge, you can no longer represent both clients. Both sides agree on that. We and Quinn agree that's the test under Virginia law. That's a fact question about whether your client's interests have diverged. That goes to conflict, and the court says, there's now a lot of evidence in front of me that your interests have diverged and that you may no longer be representing dossier. I need to get to the bottom of that. The court didn't say, I'm waiving privilege, I'm setting aside any of those things. At that point, the privilege arguments weren't even really teed up for the court. The court was saying, I need to determine the threshold question of whether there's an attorney-client relationship at all, and you are preventing me from doing that, Quinn, by not handing over these communications. Now, we now know it's not because they're trying to protect an attorney-client privilege. On the public record? Well, yes, in two ways, right? Set aside the most recent dossier declaration and whether you consider that at all. Should I know more than produced on the public record without making a determination of a lack of attorney-client privilege? So, Judge Ike, I agree with you that the public disclosure is the one part of the order that I do think is potentially problematic, and if Quinn had come in and said, look, we want to comply. We've discussed this with our client. We want to comply. We'll give them to you in camera, and the judge had denied that. I think that might well have been an abuse of discretion, but that's not the way this played out because Quinn has never wanted to comply. Quinn doesn't want to turn over these e-mails for the obvious reason. I don't see what authority you have for the idea that somebody held in contempt for invalid reasons has an obligation to say you should modify your order so it's valid, so that I'm in contempt. Well, two things, Judge Ike. One, we're reimagining the contempt order. The district judge here was very clear three times in the order, at page 59, page 89, footnote 15, and page 94, to say Quinn has abandoned his privilege argument because in light of the Latham dossier e-mails, dossier has already put in e-mails what his conversations were with Quinn, and he's given them to Latham, and Latham has given them to court. So Quinn below, and this is at page 43, 948, says any confidentiality concerns have been waived, their word, not mine. And the only reason they give that they shouldn't be held in contempt is they've substantially complied. And Judge Lauck, in her order three separate times, says, I understand Quinn's no longer challenging my underlying order because the privilege is off the table, because dossier is attempting to get these things to me, and Latham has disclosed the e-mails. The only thing Quinn here is saying, the judge understood, is that they've complied, and the judge says that's wrong. Now, on appeal, Quinn has entirely reimagined this whole proceeding. It's become about the underlying order, which is not what was in front of the judge. And even with respect to the underlying order, Judge Dyke, they have recharacterized it as something it wasn't. You're right that the privilege belongs to the client, but the only way for the court to determine whether that privilege could be evoked and whether it applied, whether there was a relationship at all between the attorney and Dr. Dossier, was to look at those communications. But I will grant you that the one thing the court should have done that it didn't was to say, give them to me in camera, and if that were what they were complaining about, and if that were the basis for the contempt finding, we'd have a totally different case, and that's what the judge notes in footnote 16. It says, look, it's not like they asked me for in camera. In front of what case says it faced with invalid order, you'd have to tell the judge to revise it. It's only invalid in a part they didn't challenge, Judge Dyke. In other words, they're not concerned about the public disclosure of the thing. They never spoke to their client, not for weeks, not for months, for years, their putative client. And that's the most remarkable thing about this case. Mr. Clement is standing here saying Quinn could not turn over these communications because it needed to protect an attorney-client privilege from a client who was actively attempting to decline their representation, who we now know had that representation thrust on him against his wishes, and who has told the court that if given the opportunity, he would disavow the privilege, but he was never consulted about it. Can I just move you on to the you probably don't want to answer this or can't answer this, but what Judge Dyke asked Mr. Clement earlier, which is assuming hypothetically this case, the merits case, goes down on 101 or even at a minimum on the enhancement of damages and the argument being made by the other side that you can't use this issue to enhance damages with respect to the particular infringement case we have before us. Does this issue go away? I mean, now, the judge, you can't control what the judge wants to do, sua sponte, I guess. But from your perspective, does this issue go away? So I would say two things, Judge Prost. No, I think in fairness to Mr. Clement, there is a law firm that still had a contempt finding entered against it that I think it has standing to challenge because it faces some separate harm from that order. No, but I'm assuming, I'm sorry, I'm assuming that we vacate the contempt order. If you vacate the contempt order, then, well, I think the key is are you reversing or are you vacating? If I were the district judge and this court said we think there was a procedural problem here, then I think it should be sent back. If the court thinks that the district court had no power to look into these communications, even if maybe they procedurally didn't do it the right way, then I suppose it would reverse. I think that would be a pretty remarkable thing to say. But the key point about the two appeals, Judge Prost, is the district court was very careful about this and said three separate times, this is pages 120, 127, and 140 of the appendix, that it was doing the enhanced damages totally independent of the negative inference. I think that she said possibly. I didn't use the word possibly. And the day she issued the two the same day and in her order, contempt order, didn't she link it to the negative inference for purposes of enhancement? So, Judge Prost, I think Chief Judge Lauk was quite careful about this, and I want to actually just, like, read what she said. She said, On balance, and even without considering the court's negative inference towards Norton regarding the unproduced communications, which are the subject of the court's separate order and opinion on the motion at show cause, the read factors as a whole show that Norton's conduct in this case has been sufficiently egregious toward enhanced damages. And she also said, but she also said, quote, it was possible that this record might support treble enhancement under read, even absent consideration of the negative inference. Oh, okay. So three things. First, she starts off in the language I read and said, in general, the read factors supported without the negative inference. Then on the one factor of litigation misconduct where it's relevant, she says at page 127, I would find this factor weighs even without the negative inference. Then at page 140 in the passage you were reading, she does the multiplier. But I read that sentence differently. What she says is, look, I could have gone to 3X in this case. I could have done it even without the contempt stuff. I could have gone all the way to 3.3X. But I'm not doing that. So you think the negative inference was the difference between 2.6 and 3? We have, in order to make sense of everything she says, right, let's look at it in  She says at the beginning, set aside the negative inference. I find the factors in general weigh in favor of enhancement. Okay. But even forget the negative inference. All of the stuff in her opinion relies on Dr. Darcier and the conduct, right? Even absent the negative inference, let's assume hypothetically that if it survives 101, we still think that you couldn't have done used actions and conduct related to a different patent that wasn't the subject of the enhancement. As a matter of law, you can't go there. So that goes away. That amount goes away. Or it has to have a do-over to just rely on what went down with respect to this case outside of any conduct dealing with Dr. Darcier, right? So I think the judge is clearly correct that if there was litigation misconduct with respect to the other patents, the Court could still consider that as part of the patent of litigation, pattern of litigation misconduct in determining whether to enhance damages. But at page 140, all it says in the passage you read, Judge Prost, is I find seven of eight factors. So that's 87%. That's a 2.6x multiplier. The Court said I'm not doing a qualitative weighing, not looking at the misconduct. I'm just doing pure math. And on the litigation misconduct, and this is the key point, Judge Prost, when the Court does dossier, it's one of four categories on that one factor. And even with respect to dossier, the Court does not focus on what Mr. Clement and I are talking about on contempt. It only talks about the mishandling of dossier as a witness, the fact that he doesn't show up at trial. And everybody acknowledges that that happens. But the enhancement under the statute, the enhancement is for the infringement of the infringement amount. The infringement, the finding of infringement with respect to particular claims and particular patents is outside of Dr. Darcier and what his testimony was in anything doing with trial. His was in connection with inventorship and fraudulent concealment, right? And the jury didn't find for you all on that issue. Well, that's right. But because we didn't have Darcier's testimony, right? If we had had Darcier there saying on the statute.  So you think she can award enhancement? I mean, that's a pretty long road to get to enhancement of the damages that the jury found to connect them to that. No. I think it's your point to now Norton, not Quinn, in the first appeal, which is you don't get to have your cake and eat it, too. If you want to say that the closeness of the case is the entire action, then when we get to litigation misconduct, we have to look at the misconduct that the lawyers committed throughout the entire case, not with respect to only whichever claims the jury found infringement on. And what she. I'm sorry. I've led you down this road. No. This is probably an issue that should be explored more. But Judge Lauck addressed this. I mean, Judge Lauck sort of said, look, this was all a pattern of misconduct by Norton's lawyers. They relitigated issues. They engaged in improper cross-examination, despite my repeated warnings. And then as part of that pattern says, not all the stuff we're focused on for contempt, but says, and they had dossier, and they could have produced him for trial, but they didn't keep him posted on trial and he didn't come. And that's from the Latham dossier emails. That's nothing to do with contempt. Those are in front of the judge at the time, well before the contempt finding. Okay. We don't want to get into that. I've led you down this road. Counselor, I have just a couple of questions. Would you say that the March 15th order vitiated the attorney-client privilege? I think the March 15th order was designed to figure out whether there was an attorney-client relationship that could give rise to privilege. I think the court had in front of it a law firm that was claiming. Would you say that that order reads to question the attorney-client privilege or to infer that it does not exist? I don't think the order, I think, again, we have to separate out two separate questions. That's what I'm trying to do. And I'm trying to get your response focused on the March 15th order with respect to the attorney-client privilege. It seems to me that as a result of that order, that the privilege no longer existed, or at least in the court's mind. Well, I don't. I think the court thought there was a substantial question about that, Judge  And this is the problem with the case. And obviously we. Let's just go with that. There's a significant question about that. Why did the court not at that point in time issue an order to show cause or to require that the parties appear in limine? There's other ways to protect confidentiality. I mean, we're all familiar with redaction, right? No. I think, Judge Raina, you've got to put yourself in the district court's shoes, right? The other side keeps wanting to run together conflict and privilege. And what the district court said was, you admitted that you misrepresented to your client. You said I told you that you're representing me. And I never said that. And you've never explained to me why you made that misstatement. So I've got some evidence in front of me that you're misleading your client. I have a lot of other evidence that your client wants to testify. He's said that multiple times. And you're now telling me he's changed his mind, but he's not here. I have real questions about whether you are still fairly representing this client or you're disserving dossier in order to serve Norton. And I need to get to the bottom of it. And dossier is over in Saudi Arabia. So it's not like I can call him in for a hearing. But what I can do is I can look at the communications between you and your putative client to figure out whether you've been communicating and whether this client actually wants you to be representing him. As it turns out, the client didn't want to be represented, signed the 2020 declaration only because they demanded it, and later said in emails, Quinn has been pretending to represent me but shielding me from trial. And that's clear to me now because my testimony would, quote, be harmful, end quote, to Norton. Is this in the record? It is in the record. Those are the Latham dossier emails that were in front of the district court. That's dossier's language on the eve of trial saying, if I had known that the trial was coming up in six days, I would have been there. But no one told me. I didn't even know. I would be happy to testify. I've always said that. And the judge says, wait a minute. Quinn, and to some extent Latham, you just told me that your client made a voluntary decision not to testify at trial next week. And now you're submitting emails from the last 48 hours where your putative client says he would have been happy to testify if he had any idea that there was a trial going on. What is going on? And so, Judge Rayner, I don't think that the court was vitiating the privilege or setting it aside. I get that if they'd asked for in-camera review, I think that would have been the right thing to do. But what the court was saying was, look, I've had multiple rounds of briefing on this. You've known it was an open question. You've now misrepresented that open question to your client. We're going to get to the bottom of this. What would you say did the trial court mean for the sanctions to be punitive in nature? Not at all. I mean, that's the thing about reading this record. If you looked at what was in front of the district court. It makes a difference, correct? It's punitive. It does. But the district court's very clear. This is at pages 95 to 98 and 87 of the appendix. Judge Lauk says, I haven't seen conduct like this in my entire time on the  But she doesn't fly off the handle. She doesn't enter anything criminal. She says, I'm only doing civil sanctions. Civil sanctions require less procedure than criminal sanctions. And the only thing I'm going to do is I'm going to try to make Columbia whole. If Columbia had had Dossier testify at trial, that would have been relevant to the 643 claim. And they were not able to show that they were not able to have him at trial. And they weren't because of the misconduct of Dossier's lawyers. That misconduct is relevant to the post-trial motions. I haven't read it. And so the negative inference, that's it. Thank you, Mr. Long. Mr. Conlon, you've got two minutes. Thank you, Your Honors. Just a few points in rebuttal. First of all, there was no waiver of the fundamental issues that we're raising here. And the timeline on this is important. But the reason that later in the contempt proceedings we're not making this argument is twofold. One, the judge has already definitively rejected it. But second, once we're off of the scene in representing Dossier as of March 22nd, at that point, Latham, who's now representing only Norton and not Dossier, has a reach-out to Dossier. And then Dossier shares certain emails with Latham, who's not representing Dossier. So in that sense, there's like the good old-fashioned waiver of the privilege by giving it to a party who's not your lawyer. And so at that point, again, this is why it's very hard to unscramble the egg at this point. But there's certainly no waiver. It's just a different situation kind of later in the case. Second of all, my friend makes a kind of, you know, sort of arduous effort to reconstruct this order. I think don't, you know, with all due respect, I think the best place to show Columbia's understanding of the March 15th order is what they told the district court in their motion for show cause for contempt. And this is at appendix page 43, 43922 and 923. And I'm going to quote directly here. On March 15th, 2022, the court found there was no attorney-client privilege between Dr. Mark Dossier and Norton's counsel during the period when counsel's representation of Norton resulted in a conflict with its purported representation of Dr. Dossier. So they understand. And it's the only way to understand the order that directs Quinn to turn over these communications. They understand that the order has vitiated the privilege. It doesn't make any sense. The idea that while the judge just had some suspicions that the attorney-client relationship had ended and so was making an inquiry to get to the bottom of that, then if that were the order, it would be phrased differently and it would plainly require everything to be submitted in camera. The reason that the judge didn't require this stuff to be submitted in camera is because she had vitiated the privilege. So just two last points in closing. One is, I find it kind of staggering that Columbia gets through its entire briefs before this court without ever acknowledging that there was an engagement letter here. And I do think in thinking about all these issues and all the equities, you should look at that. It's at appendix 16, 566 and 67. And this idea that there wasn't an attorney-client privilege is really hard to swear with a retention letter that clearly extends for the entire litigation, not just the deposition, and says it can only be terminated in writing. Last point, and I made this, but I think it's worth just underscoring the invalidity of this order for procedural reasons as well as substantive reasons. The contrast between the handling of Norton's actual motions for sanctions, where both parties bring in ethics experts, and these motions in limine. It's night and day. This is not how you issue an order that vitiates the privilege. It was a clear procedural error and a substantive one as well. Thank you. Okay. Thank both counsel. The case is submitted.